Filed 11/10/15  Depew v. Hazan CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PATRICIA DEPEW, | B250704 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC460997) |
| v. | |
| LYDIE HAZAN et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. David L. Minning, Judge.  Affirmed.

Law Offices of Benjamin G. Ramm and Benjamin G. Ramm for Plaintiff and Appellant.

Law Offices of Jennifer F. Novak and Jennifer F. Novak for Defendants and Respondents.

_____

For years, appellant Patricia Depew (Depew) and Al Dominguez (Dominguez) rented an apartment located at 712-1/2 Stanley Street (the property). While during that time, Depew and Dominguez's landlords changed, there was one constant—ongoing litigation over the terms of their lease. The Charles and Michelle Hazan Corporation (the corporation), their most recent landlord, was no exception. This appeal stems from Depew's refusal to comply with the terms of a settlement agreement reached between the parties and the subsequent trial court order granting a motion to enforce the settlement agreement pursuant to Code of Civil Procedure section 664.6.[1]

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The corporation purchased the property at a January 2011 trustee's sale. At the time, Depew was a tenant of the property and had been, under the terms of a lease, since 1989.

In May 2011, Depew filed a declaratory relief action against the corporation, Lydie Hazan (Hazan), and other individuals (Super. Ct. L.A. County, case No. BC460997).[2] According to the complaint, Depew pays "'below market'" rent. Depew also alleges that Hazan has filed multiple unlawful detainer actions against Depew on the grounds that Depew has violated the terms of the lease by, inter alia, using her apartment as a home office and owning certain pets.

At some point, Depew dismissed the individual defendants, including Hazan, from the lawsuit and the action proceeded against the corporation alone.

As the case neared trial, a settlement was reached between Depew, on the one hand, and Hazan and the corporation, on the other hand (Hazan and the corporation collectively are referred to, both in the settlement agreement and in this opinion, as

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] This was not the first litigation between these tenants and landlords. There were at least two unlawful detainer actions.

2

defendants).  As is relevant to the issues in this appeal, the parties agreed to the following:  (1) Defendants would file an "Ellis removal"[3] to remove the property from the rental market by April 2, 2012.  (2) "In accordance with the terms of the Los Angeles Municipal Code . . . regarding Ellis removals within the City of Los Angeles," defendants would pay a relocation sum in the amount of $18,500, "payable to the names of . . . Depew and . . . Dominguez."  (3) Depew and Dominguez would have one year to vacate the premises.  (4) If defendants opted to proceed with the Ellis Act and complied with its terms, Depew and Dominguez would vacate the property without challenging the validity of the Ellis removal.  (5) The trial court would retain jurisdiction to enforce the settlement agreement pursuant to section 664.6.

Notably, although Dominguez was never a named plaintiff in the litigation and Hazan had been dismissed, Hazan expressly was a party to the settlement agreement and both Hazan and Dominguez were signatories to it.

The corporation proceeded with the Ellis removal.  On April 2, 2012, it filed a notice of intent to withdraw units from rental housing use with the Los Angeles Housing Department, stating an intent to convert the units to condominium use.  Hazan served the notice, along with the notice to quit, on Depew.

Then, the corporation opened an escrow account and deposited $51,200, the full amount of required relocation benefits for all building tenants under the Ellis Act. Because of unrelated bank issues, it took until May 30, 2012 (10 months before Depew was to vacate the property) for the escrow account to be fully funded.

---

[3]    The Ellis Act (Gov. Code, § 7060 et seq.) "provides that no statute, ordinance, regulation, or administrative action 'shall . . . compel the owner of any residential real property to offer, or continue to offer, accommodations in the property for rent or lease.' (Gov. Code, § 7060, subd. (a).)  A landlord who complies with the Ellis Act may therefore go out of the residential rental business by withdrawing the rental property from the market.  [Citation.]"  (*Drouet v. Superior Court* (2003) 31 Cal.4th 583, 587; see also L.A. Mun. Code, § 151.22–151.28.)  There are various requirements for landlords under the Ellis Act and the Los Angeles Municipal Code, including certain notice requirements and relocation payments.

The corporation selected Lee Sacks to serve as its escrow officer and provided instructions listing the property's tenants and their respective relocation fund amounts. The instructions provided for a total of $18,300 to be paid, pro rata, to Depew and Dominguez.

By January 30, 2013, Depew was in contact with Mr. Sacks, seeking her relocation benefits. Before she was scheduled to move out of her unit, she had received $9,150. Although Dominguez was entitled to receive relocation benefits, there is no evidence in the record that he ever requested them from Mr. Sacks.

Rather than vacate the premises when the one-year lapsed, Depew tried to extend her tenancy by another four months. When the corporation refused, she filed a new declaratory relief action (L.A. Super. Ct. case No. BC504491).

In response, Hazan and the corporation filed an ex parte application in case No. BC460997 to enforce the settlement agreement. The trial court set an evidentiary hearing. Following two weeks of evidence and argument, the trial court granted the ex parte application to enforce the settlement agreement. It found that Hazan and the corporation had complied with and performed their obligations under the settlement agreement and that Depew and Dominguez had breached their obligations under the settlement agreement. It ordered Depew and Dominguez to vacate the property. And, it ordered "Plaintiffs" to pay defendants' attorney fees.

Judgment was entered June 3, 2013. The judgment identifies Hazan and the corporation as defendants and Depew and Dominguez as plaintiffs. It then finds that defendants complied with and performed their obligations under the settlement agreement and that plaintiffs breached their obligations under the settlement agreement. It ordered plaintiffs to vacate the property and to pay defendants' attorney fees.

Later, defendants filed a motion for attorney fees. Depew opposed defendants' motion, arguing that she was the prevailing party; alternatively, the amount of fees should be reduced. She did not argue that Hazan was not entitled to attorney fees because she was not a party to the litigation. Following argument, the trial court determined that Depew owed Hazan $11,500 as attorney fees.

4

Depew's timely appeal ensued.

## DISCUSSION

I. *The trial court properly enforced the settlement agreement*

Depew argues that the trial court lacked jurisdiction to enforce the settlement agreement because (1) two parties to the settlement agreement (Hazan and Dominguez) were not parties to case No. BC460997,[4] and (2) the trial court's use of ex parte proceedings was prejudicial against her.

<u>First</u>, we conclude that Depew has forfeited any challenge to the trial court's jurisdiction to enforce the settlement agreement. "As a general rule, a claim of error will be deemed to have been forfeited when a party fails to bring the error to the trial court's attention by timely motion or objection. [Citations.] ""'"The purpose of the general doctrine of waiver [or forfeiture] is to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had . . . ."' [Citation.] "'No procedural principle is more familiar to this Court than that a constitutional right" or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." . . . ' [Citation.] . . . [I]t is within this court's discretion to make an exception to this rule when the issue on appeal relates to a question of law only, or where the public interest or public policy is involved." (*Avalos v. Perez* (2011) 196 Cal.App.4th 773, 776–777; see also 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 400, p. 458; *Woodward Park Homeowners Assn., Inc. v. City of Fresno* (2007) 150 Cal.App.4th 683, 712.)

Despite being served with the ex parte papers and participating in a lengthy evidentiary hearing, Depew never objected to the trial court's authority to enforce the settlement agreement. In fact, according to the settlement agreement, Depew, Hazan, and the corporation wanted to settle the pending litigation. While he was not a party to the

---

[4]     Section 664.6 provides, in relevant part: "If parties to pending litigation stipulate . . . for settlement of the case, . . . the court, upon motion, may enter judgment pursuant to the terms of the settlement."

pending litigation, Dominguez also was a willing participant to the settlement agreement. By signing the document, all four parties agreed to all of its terms. (*Roldan v. Callahan & Blaine* (2013) 219 Cal.Ap.4th 87, 93–94.) Significantly, they agreed that the trial court would retain the authority to enforce the settlement agreement. Under these circumstances, we readily find that Depew forfeited any belated challenge to the trial court's jurisdiction to enforce the settlement agreement. (See, e.g., *People v. Tindall* (2000) 24 Cal.4th 767, 776, fn. 6.)

In reaching this decision, we decline to exercise our discretion to consider this issue for the first time on appeal. Depew's argument notwithstanding, the issue is more than just a question of law. Rather, as set forth above, there are key factual questions, such as whether the parties intended to be bound by the procedure set forth in section 664.6. Public interest is not at stake. And, although not briefed by the parties, it seems that public policy tips in favor of allowing enforcement of the settlement agreement. After all, it would be a waste of the parties' resources and judicial resources to allow only a partial resolution of this ongoing landlord-tenant battle among the same persons.

Depew posits that strict compliance with section 664.6 is required before the trial court may grant a motion to enforce a settlement agreement. But, the cases she cites are readily distinguishable. (See, e.g., *Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp.* (1999) 75 Cal.App.4th 110, 113 [holding that an insurer could not be named as an additional judgment debtor when it was not a party to the action and there was no basis on which it could summarily be named as a judgment debtor]; *Kirby v. Southern Cal. Edison Co.* (2000) 78 Cal.App.4th 840, 845 [section 664.6 is a means to enforce settlement agreements entered into after litigation has been filed]; *Housing Group v. United Nat. Ins. Co.* (2001) 90 Cal.App.4th 1106, 1111 [parties to the settlement agreement were not parties to pending litigation]; *Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1257 [settlements, in order to be enforceable under section 646.6, require the personal consent of all parties]; *Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.* (2002) 103 Cal.App.4th 30, 37 [same].) Depew directs us to no case that holds that section 664.6 may not be used when nonparties are

6

signatories alongside parties to pending litigation to a settlement agreement that specifically references section 664.6.

Second, Depew has not demonstrated that the trial court's use of ex parte proceedings was unfair or otherwise prejudicial to her. She offers no supporting legal authority. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545–546.) And she has failed to show how more time would have aided her defense. In short, Depew neglected to demonstrate prejudice. (Cal. Const., art. VI, § 13.)

## II. *Defendants did not breach the settlement agreement*

Depew argues that the judgment must be reversed because defendants breached the settlement agreement by failing to pay the full amount of monies that they owed and by using an escrow account.

To answer this question, we are called upon to interpret the settlement agreement. We do so de novo under settled rules of contract interpretation. (*Ameron Internat. Corp. v. Insurance Co. of State of Pennsylvania* (2010) 50 Cal.4th 1370, 1377.) "'The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties. "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id*., § 1639.) The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' (*id*., § 1644), controls judicial interpretation. (*Id*., § 1638.)" [Citations.]'" (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 647–648.)

"When parties dispute the meaning of contractual language, the trial court must provisionally receive extrinsic evidence offered by the parties and determine whether it reveals an ambiguity, i.e., the language is reasonably susceptible to more than one possible meaning. If there is an ambiguity, the extrinsic evidence is admitted to aid the interpretative process. 'When there is no material conflict in the extrinsic evidence, the trial court interprets the contract as a matter of law. [Citations.] . . . If, however, there is a

conflict in the extrinsic evidence, the factual conflict is to be resolved by the [factfinder]. [Citations.]' [Citation.]" (*Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP* (2011) 201 Cal.App.4th 368, 376–377; see also *Supervalu, Inc. v. Wexford Underwriting Managers, Inc.* (2009) 175 Cal.App.4th 64, 72–73.)

Here, the settlement agreement is ambiguous. Article 2 provides, in relevant part: "In accordance with the terms of the Los Angles Municipal Code . . . regarding Ellis removals . . . , Defendants shall pay to Plaintiff the sum of $18,500 in relocation fee in accordance with the now-current terms and conditions of the Los Angeles Municipal Code regarding Ellis removals of properties in the City of Los Angeles." But there is a problem: Applying the express terms of the Ellis Act, Depew and Dominguez were entitled only to $18,300. In light of this inconsistency, the trial court was forced to turn to the parties' extrinsic evidence to determine what they intended. But the parties' appellate briefs do not direct us to any evidence of the parties' intent beyond what is contained in the settlement agreement itself (and the settlement agreement expressly contemplates the parties' intent to comply with the Ellis Act). Given the absence of extrinsic evidence, Depew has not met her burden on appeal.

Depew also objects to defendants' use of an escrow account. Again, there is no indication that she raised this argument below, thereby forfeiting it on appeal. Setting that procedural obstacle aside, the Rent Adjustment Commission Regulations issued by the Los Angeles Housing Department allow for the use of escrow accounts.

III. *The trial court properly entered a judgment for possession*

Depew asserts that the trial court erred by entering a judgment for possession. We see no error.

First, Depew claims that defendants provided insufficient notice of their intent to seek possession because their ex parte application only made a generic request to enforce the settlement agreement; their ex parte application did not mention a writ of possession. She is mistaken. Defendants' ex parte application specifically requests "an order pursuant to [section] 664.6, entering judgment enforcing the terms of the [settlement agreement] as follows: Defendants are to retain possession of the [property]

8

immediately." This language was sufficiently clear to put Depew on notice of the relief sought.

Second, Depew claims that the trial court had no right to evict Dominguez. Dominguez is not an appellant and Depew lacks standing to assert arguments on his behalf. She has not shown how the issue of his alleged "mistreatment . . . affected her interests." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 33, p. 94.)

Finally, the trial court had the authority to enter judgment for possession pursuant to the terms of the settlement agreement. Defendants instituted an Ellis Act removal, as contemplated by the settlement agreement. Depew and Dominguez agreed that they would vacate the premises if defendants instituted an Ellis Act removal and otherwise complied with the terms of the settlement agreement. As set forth above, that is exactly what occurred. Under these circumstances, the trial court had the power to enter a judgment for possession.

Depew's reliance upon the Los Angeles Rent Stabilization Ordinance is misplaced. Landlords are permitted to evict tenants pursuant to the terms of the Ellis Act. (L.A. Mun. Code, § 151.09 [titled Evictions].)

IV. *Depew did not meet her burden in demonstrating that defendants failed to comply with the Ellis Act*

Depew argues that the trial court erred by construing the settlement in favor of a forfeiture because defendants failed to comply with the Ellis Act. First, she asserts that defendants neglected their obligation to remove all units from the rental market. But, she offers no evidence that any units were withheld from removal from the rental market. Second, while there was a slight delay when the monies were deposited in the escrow account, that was the result of circumstances beyond defendants' control and did not impact Depew receiving her relocation funds; she shows no prejudice. Last, her contention that defendants failed to exhaust their administrative remedies is unsupported by legal authority.

V. *Attorney fees*

Finally, Depew contends that Hazan had no right to recover attorney fees because, after her dismissal, she no longer was a party to the action. Depew's argument fails on procedural grounds. She did not raise this argument below. (*Avalos v. Perez*, *supra*, 196 Cal.App.4th at pp. 776–777; *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501 [permitting a party to adopt a new theory on appeal would be unfair to the trial court and the opposing litigant].) Regardless, even if we were to reach the merits of this argument, we would reject it. As set forth above, Hazan was a willing participant and signatory to the settlement agreement and all of its terms. The settlement agreement provides for the prevailing party to recoup his or her attorney fees. The trial court's judgment awarded attorney fees to "defendants," and not just the corporation. It follows that Hazan is entitled to an award of attorney fees.[5]

**DISPOSITION**

The judgment is affirmed. Defendants are entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
          ASHMANN-GERST

We concur:

_____, P. J.
      BOREN

_____, J.
      HOFFSTADT

---

[5] It is curious that while both Hazan and the corporation moved for attorney fees, the trial court's order (prepared by defendants' counsel) only awarded attorney fees to Hazan. But Depew did not meet her burden on appeal in demonstrating that this was error.